UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| **ALBERT PINA-SUAREZ,** § | | |
| Institutional ID No. 39213-004, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | **CIVIL ACTION NO.** | |
| § | **1:11-CV-109-BI** | |
| **R. RIOS**, *et al.*, § | **ECF** | |
| § | | |
| § | | |
| Defendants. § | **Referred to U.S. Magistrate Judge** | |

## REPORT AND RECOMMENDATION

Plaintiff, proceeding *pro se* and *in forma pauperis*, has filed a civil rights action pursuant 42 U.S.C. § 1983. This court treats this case as filed pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See Stephenson v. Reno*, 28 F.3d 26, 26 n.1 (5th Cir. 1994). Plaintiff was confined at all times relevant to the claims in his complaint to Federal Correctional Instition - Big Spring ("FCI Big Spring"), in Big Spring, Texas. Plaintiff is currently confined to Federal Correction Institution - Beckley in Beaver, West Virginia ("FCI-Beckley"). Plaintiff has refused his consent to proceed before the United States magistrate judge pursuant to 28 U.S.C. § 636(c).

A questionnaire or evidentiary hearing may be used to assist the court in determining whether the case should be dismissed under these circumstances. *See Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976) (use of questionnaire to develop the factual basis of the plaintiff's complaint). The court entered an Order to Complete Questionnaire on October 7, 2011 (Doc. 15), requiring Plaintiff to file a response to the questionnaire within 15 days. Plaintiff failed to file a response to

the Questionnaire. The Order was returned as undeliverable to the court. The court entered an Order to Show Cause requiring Plaintiff to file a response showing cause for his failure to notify the court of his current mailing address. The docket reflects that Plaintiff received the Order to Show Cause on October 21, 2011. Plaintiff failed to file a response to the Order to Show Cause.

Plaintiff filed an Amended Complaint on August 8, 2011 (Doc. 19). Plaintiff notified the court of his current address at FCI-Beckley on December 9, 2011 (Doc. 21).

Pursuant to 28 U.S.C. § 1915A, the court has conducted a review of Plaintiff's Amended Complaint as supplemented by his testimony at the evidentiary hearing in this case, as well as Plaintiff's various additional written documents and makes the following report and recommendation to the United States District Judge.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

In his Amended Complaint, Plaintiff claims that:

1. On July 19, 2009, while Plaintiff was confined to FCI-Big Spring, Defendant R. Rios, a correctional officer, called him a "snitch" in the presence of 40 prisoners.

2. Rios wrote an incident report for an inmate Saladino. Plaintiff alleges that Rios told Saladino that he had Plaintiff to thank for incident report.

3. Plaintiff was thereafter assaulted by several prisoners who were present when Rios called him a snitch.

4. Plaintiff was placed in the Special Housing Unit ("SHU") pending an investigation.

5. As a result of the investigation, the incident reports written by Rios were expunged.

6. Plaintiff was kept in the SHU for his safety.

7. Plaintiff later submitted a grievance against Rios, complaining that calling Plaintiff

a "snitch" had placed his life in danger.

8. Plaintiff was told by Defendant Moore that Rios was her friend and that Plaintiff was not making friends among the staff by filing grievances.

9. Moore failed to provide Plaintiff with grievance forms or copies related to a petition for writ of habeas corpus.

10. Plaintiff obtained a grievance form and submitted it to Moore. Moore did not respond but told Plaintiff she did not have time for his crying.

11. Plaintiff complained about Moore to Defendants Edenfield and Vialaponda.

12. At a Unit Disciplinary Committee ("UDC") hearing, Defendant Roman grabbed Plaintiff around his biceps area with his fingernails in Plaintiff's skin. Plaintiff told Roman he was going to write a complaint about him.

13. Roman wrote an incident report against Plaintiff for threatening staff. Moore wrote a memorandum indicating that Plaintiff had threatened her colleague at a UDC hearing. Plaintiff complained about Roman.

14. Plaintiff complained to Vialaponda about Moore and Roman and asked Vialaponda for copies of documents related to his complaints about staff members.

15. Plaintiff complained to D. Daniels about his unit team members and their failure in assisting him with obtaining copies.

16. Plaintiff gave Daniels the documents that he wanted copied. Daniels told Plaintiff to file a inmate request form because Plaintiff would be charged copying costs. Plaintiff completed the form and directed it to Vialaponda.

17. Plaintiff was charged $23.20 for the copying costs. However, some of the copies

were of poor quality and when the documents were returned to Plaintiff, some pages were missing.

18. Vialaponda wrote an incident report against Plaintiff for misspelling his name in an offensive manner on the inmate request form.

19. Plaintiff experienced back and knee pain. Plaintiff was examined by the medical department and an appointment was made for him to be examined by a medical specialist.

20. During the medical examination by the specialist, Plaintiff complained about FCI-Big Spring staff and the medication given to him. Plaintiff argued with Defendant Dr. Partida, who thereafter instructed a correctional officer to return Plaintiff to his cell.

21. Plaintiff went on a hunger strike.

22. Plaintiff complained about various employees and the quality of the drinking water and ventilation system to Warden K. Edenfield. Edenfield told Plaintiff if he wanted filtered water, he should have remained in the general population, which was provided with water through a reverse osmosis system. Plaintiff complained about the temperatures in the SHU and that he was experiencing retaliation in the form of false incident reports. Plaintiff also complained about his medical care and that he was in danger in the SHU because inmates with gang ties were placed in his cell.

23. Edenfield did not provide Plaintiff with the relief he sought.

24. Plaintiff was not permitted to participate in certain educational programs.

25. Plaintiff was not permitted to receive newspaper and magazine subscriptions while in the SHU.

23. Plaintiff experienced a rash and abdominal pains when he drank water in the SHU.

Plaintiff is seeking an award of damages and any other relief to which he may be entitled.

## II. ANALYSIS

In both proceedings *in forma pauperis* and civil actions brought by a prisoner against a governmental entity, officer, or employee, the court is required under 28 U.S.C. §§ 1915-1915A to dismiss the complaint or any portion of the complaint if the complaint is frivolous or malicious or fails to state a claim on which relief may be granted. These provisions thus apply to this *in forma pauperis* prisoner civil rights action. *Harris v. Hegmann,* 198 F.3d 153, 156 (5th Cir. 1999). "An [*in forma pauperis*] complaint may be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) if it has no arguable basis in law or in fact." *Ruiz v. United States*, 160 F.3d 273, 274-75 (5th Cir. 1998). A claim has no arguable basis in law or fact if it is based on an indisputably meritless legal theory or if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless. *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). The court is authorized *sua sponte* to test whether the proceeding is frivolous or malicious even before the service of process or before an answer is required to be filed. *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990); *see also* 42 U.S.C. § 1997e(c)(1). A questionnaire or evidentiary hearing may be used to assist the court in determining whether the case should be dismissed under these provisions. *See Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976) (use of questionnaire to develop the factual basis of the plaintiff's complaint); *Spears,* 766 F.2d 179 (use of an evidentiary hearing).

The court has reviewed Plaintiff's arguments and claims in his amended complaint, to determine whether Plaintiff's claims present grounds for dismissal or present cognizable claims which require the Defendants to answer and the case to proceed.

**A.    Deliberate Indifference to Serious Medical Needs**.

Plaintiff claims that the Defendants subjected him to cruel and unusual punishment by failing

to provide him with effective medication for his back pain and were deliberately indifferent to his serious medical needs. In order to state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).

It is well settled that the Eighth Amendment to the Constitution protects inmates from "conditions so serious as to deprive [them] of the minimal measure of life's necessities." *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999). In the context of medical care, or lack of care, the Eighth Amendment prohibits the unnecessary and wanton infliction of pain or care repugnant to the conscience of mankind. *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976). Not every claim of inadequate or improper medical treatment is a violation of the Constitution, however. *Id.* at 105-07. To establish an Eighth Amendment medical claim for cruel and unusual punishment, Plaintiff must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. A complainant must show that a prison official's state of mind was "one of 'deliberate indifference' to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the jail officials were actually aware of the risk, yet consciously disregarded it." *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002). Thus, the prison official must "know of and disregard [the] excessive risk to inmate health or safety." *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999) (citations and brackets omitted). Moreover, "the facts underlying a claim of 'deliberate indifference' must *clearly evince* the medical need in question and the alleged official dereliction." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (citing *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981)).

"To violate the Cruel and Unusual Punishment Clause, a prison official must have a 'sufficiently culpable state of mind.'" *Hall*, 190 F.3d at 697 (quoting *Farmer*, 511 U.S. at 834). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Id*.

The deliberate indifference requirement is more than mere negligence in failing to supply medical treatment. *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). A complaint "that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Hall*, 190 F.3d at 697 (citing *Estelle*, 429 U.S. at 105). Neither "'negligence, neglect or medical malpractice'" gives rise to a § 1983 cause of action. *Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1991) (citing *Johnson,* 759 F.2d at 1238). "[N]egligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action." *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993). A negligent or "inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Estelle,* 429 U.S. at 105-06. While inadequate treatment "may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." *Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir. 1999). Thus, mere "negligence is insufficient to support a finding of liability"; the Plaintiff must show that the Defendants were "deliberately indifferent." *Adames v. Perez*, 331 F.3d 508, 514 (5th Cir. 2003).

Deliberate indifference is also more than disagreement between patient and doctor as to the appropriate treatment, except in exceptional circumstances. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ([A]bsent exceptional circumstances, a prisoner's disagreement with his medical

treatment is not actionable under § 1983.). Moreover, "[u]nsuccessful medical treatment does not give rise to a § 1983 cause of action." *Varnado*, 920 F.2d at 321 (citing *Johnson*, 759 F.2d at 1238); *Fielder v. Bosshard,* 590 F.2d 105, 107 (5th Cir. 1979).

Rather, to show deliberate indifference to his serious medical needs, the Plaintiff must demonstrate that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson*, 759 F.2d at 1238). Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos*, 41 F.3d at 235 (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir.1993)).

Plaintiff's Amended Complaint demonstrates that he was examined by the medical department and was seen by a specialist. Plaintiff was given medication. Plaintiff did not believe that the medication provided was effective for his back and knee pain.

Plaintiff's allegations do not demonstrate that the FCI Big Spring medical personnel or staff refused to treat him, ignored his complaints, or intentionally treated him incorrectly. *Domino*, 239 F.3d at 756. Disagreement with the type of medical care provided is actionable under § 1983 only if there were exceptional circumstances. *See Varnado*, 920 F.2d at 321. Plaintiff's allegations do not demonstrate that any such circumstances were present. Whether to provide additional treatment or to determine the treatment to provide "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107; *Domino*, 239 F.3d at 756. Plaintiff's disagreement with the medications and treatment provided for him are not sufficient to make a claim for deliberate indifference to serious medical needs. There are no exceptional circumstances in this case. Plaintiff's disagreement

with Dr. Partida's decision to terminate an appointment with a specialist after Plaintiff continued to complain about his treatment providers and medication also does not demonstrate deliberate indifference. While Plaintiff alleges that he had difficulty in obtaining slips to submit for sick call, he also alleges that he was seen and treated by medical providers.

Having accepted all of Plaintiff's factual allegations as true, the court nevertheless finds that Plaintiff's allegations fail to state a cognizable constitutional claim for deliberate indifference to his serious medical needs and recommends that such claim be **DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

**B.   Failure to Protect Claim**

Plaintiff alleges that Defendant Rios failed to protect him and was deliberately indifferent to his health and safety by calling him a snitch in front of other inmates. Plaintiff alleges that Rios made the comment, told another inmate that he could thank Plaintiff for the incident report he was getting, and Plaintiff was thereafter assaulted by inmates and placed in the SHU for protection.

In its prohibition of cruel and unusual punishment, the Eighth Amendment to the Constitution imposes restraints on prison officials who must "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). This duty includes protecting prisoners from the violence of other prisoners. *Wilson v. Seiter,* 501 U.S. 294, 303 (1991) (referring to the protection of an inmate as a condition of confinement). Prison officials, however, are not liable under the Eighth Amendment for every injury suffered by one prisoner at the hands of another. *Farmer,* 511 U.S. at 834. To violate the Cruel and Unusual Punishments Clause in cases regarding conditions in a prison, the prison official must have a state of mind of deliberate indifference to the inmate's health or safety. *Wilson,* 501 U.S. at 302-03. A prison official may thus

violate the Eighth Amendment if he is deliberately indifferent to an inmate's health or safety. *Farmer,* 511 U.S. at 834. The Supreme Court, in *Farmer*, defined the proper test for determining deliberate indifference in prison conditions cases. 511 U.S. 825 (1994). The Court held that, in these cases, an official is not liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "To prevail on a section 1983 failure to protect claim, a prisoner must demonstrate that 'he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.'" *Jones v. Greninger,* 188 F.3d 322, 326 (5th Cir. 1999) (quoting *Newton v. Black,* 133 F.3d 301, 308 (5th Cir. 1998)). In other words, the prison official must be subjectively aware of a substantial risk of serious harm to the inmate and fail to protect the inmate from that harm. *Farmer*, 511 U.S. at 839-40. Thus, the "'failure to alleviate a significant risk that [the official] should have perceived, but did not' is insufficient to show deliberate indifference." *Domino,* 239 F.3d at 756 (quoting *Farmer*, 511 U.S. at 838). A claimant, however, may rely on circumstantial evidence indicating that because the risk was obvious, the official must have known of the risk to the inmate. *See Hope v. Pelzer*, 536 U.S. 730, 738 (2002). Mere negligence or neglect, however, does not constitute deliberate indifference. *Fielder*, 590 F.2d at 107. "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Hall*, 1909 F.3d at 697 (quoting *Farmer*, 511 U.S. at 834).

Plaintiff's allegations, accepted as true, demonstrate that he did not complain about Rios' actions until after he was assaulted and that he was placed in the SHU for his protection upon investigation of the incident. These allegations fail to demonstrate that any officer knew of and ignored a risk to Plaintiff's safety, with the exception of Defendant Rios. The court therefore recommends that Defendant Rios be ordered to **ANSWER OR OTHERWISE PLEAD** on Plaintiff's claim that Rios was deliberately indifferent to his health and safety and that any other claims of failure to protection or deliberate indifferent to health and safety be **DISMISSED WITH PREJUDICE AS FRIVOLOUS.**

**C.     Retaliation Claims**

Plaintiff alleges that he was subjected to numerous acts of retaliation. He alleges that Moore refused to give him a grievance form or make him copies. Plaintiff was able to obtain a grievance form from another inmate and purchased copies after submitting an inmate request form.

Plaintiff argued with Roman during a UDC meeting, which resulted in Roman bringing an incident report for threatening a staff member. Moore wrote a memorandum supporting Roman's assertion. Plaintiff alleges that Vialaponda wrote an incident report against him for misspelling his name.

In order to sustain a § 1983 retaliation claim, Plaintiff must establish: (1) the existence of a specific constitutional right; (2) the defendant's intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation. *Freeman v. Tex. Dep't of Crim. Justice,* 369 F.3d 854, 863 (5th Cir. 2004) (citing *Woods*, 60 F.3d at 1166). The inmate must allege more than his personal belief that he is the victim of retaliation. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). Mere conclusory allegations of retaliation are insufficient to support a claim of retaliation. *Id.* The

plaintiff "must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods*, 60 F.3d at 1166. Plaintiff is required to "produce direct evidence of motivation" or "allege a chronology of events from which retaliation may plausibly be inferred." *Id.* The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions. *Id.* at 1166 (citing *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims.

Plaintiff essentially argues that he complained about Rios, that Moore told him Rios was her friend, that Moore wrote a memorandum in support of Roman's incident report for threatening a staff member at a UDC meeting, and that Vilaponda gave him copies that included pages which were illegible and further argues that Vilaponda returned documents to him with pages missing.

Despite filing an Amended Complaint to further elaborate on his claims, Plaintiff's factual allegations, accepted as true, fail to demonstrate that but for his complaints about Rios, he would not have received incident reports, he would not have had problems with his copies, and Moore would have provided him with the grievance forms he sought and obtained from another source. Plaintiff relies entirely upon his conclusory allegations to support his claims of retaliation. The court finds that Plaintiff's retaliation claims lack an arguable basis in law or fact, and recommends that they be **DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

**D.    Due Process Claims**

Plaintiff argues that he was given false disciplinary reports. The court notes that malicious prosecution no longer provides an independent basis for a section 1983 claim in the Fifth Circuit. *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) ("[N]o . . . freestanding constitutional right to be free from malicious prosecution exists."). Thus, an inmate's claim that an officer initiated disciplinary proceedings against him without probable cause does not state a claim.

Plaintiff alleges that Warden Edenfield did not appropriately investigate his complaints and denied his grievances and requests for relief. The Fifth Circuit has made it clear that a "prisoner has a liberty interest only in 'freedoms from restraint . . . imposing atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (quoting *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995) and *Sandin*, 515 U.S. at 484). Plaintiff does not "have a federally protected liberty interest in having these grievances resolved to his satisfaction." *Id.* Therefore, Plaintiff's due process claims against all Defendants with regard to false disciplinary cases and denial of his requests and grievances lack an arguable basis in law or fact. The court recommends that such claims be **DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

E. **Plaintiff's Excessive Force and Conditions of Confinement Claims**

Plaintiff alleges that Roman subjected him to an excessive use of force by grabbing his arm such that Roman's fingernails caused Plaintiff pain. Plaintiff further alleges that he was subjected to cruel and unusual punishment insofar as he was confined to the SHU, first pending an investigation, and later for his own protection. Plaintiff alleges that in the SHU, he did not have access to the same water, he was subjected to temperature extremes, and he was deprived of access to certain of his newspapers or magazines.

"The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999)(quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995). In order to establish a constitutional violation, a prisoner must first demonstrate the objective component of conditions "so serious as to deprive prisoners of the minimal measure of life's necessities"; and, second, the prisoner must establish under a subjective standard that the responsible prison officials acted with deliberate indifference to his conditions of confinement. *Harper*, 174 F.3d at 720 (citing *Woods*, 51 F.3d at 581).

Plaintiff alleges that while he was in the SHU, his access to certain publications was limited, he found the water substandard, and he experienced cold and hot temperatures. Plaintiff's allegations fail to demonstrate conditions "so serious as to deprive prisoners of the minimal measures of life's necessities." *See Harper*, 174 F.3d at 720.

Moreover, pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." *See* 42 U.S.C. § 1997e(e). The PLRA thus requires a physical injury before a prisoner can recover for psychological damages, which must be more than *de minimis* but need not be significant. *Harper*, 174 F.3d at 719 (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)).

To succeed on an excessive force claim, a plaintiff bears the burden of showing (1) an injury (2) which resulted directly and only from the use of force that was excessive to the need, and (3) the force used was objectively unreasonable. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001)

(internal quotation marks omitted). The determination of excessive force includes consideration of the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Baldwin v. Stalder*, 137 F.3d 836, 838 (5th Cir. 1998) (citing *Hudson v. McMillian*, 503 U.S. 1, 7(1992)). The absence of serious injury, while relevant to the inquiry, does not preclude relief. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997. However, the Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimus* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Id.*

Under § 1997e(e), "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 631 (5th Cir. 2003) (citing 28 U.S.C. § 1997(e)). "[T]he 'physical injury' required by § 1997e(e) 'must be more than *de minimus* [sic], but need not be significant.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Siglar*, 112 F.3d at 193). The Fifth Circuit has found an injury insufficient to support an Eighth Amendment claim where there is no physical injury or where it is extremely minor. *Harper*, 174 F.3d at 719; *Siglar*, 112 F.3d 191. In *Siglar* the plaintiff's ear was bruised and sore for three days but he did not seek or receive medical treatment for any physical injury resulting

from the incident, and he did not allege any long-term damage to his ear. 112 F.3d at 193. The Court found that this constituted a *de minimis* injury. *Id*. In *Harper* the Court found no injury where the plaintiff himself did not allege any physical injury. 174 F.3d at 719. To support an Eighth Amendment claim, a prisoner must sustain "a more than *de minimis* physical injury, but there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Gomez*, 163 F.3d at 924.

Plaintiff alleges that he experienced pain as a result of the way Roman grabbed his arm. A valid Eighth Amendment claim for excessive use of force must be supported by a physical injury that is more than *de minimis* but that need not be significant. *Siglar*, 112 F.3d at 193. Plaintiff's allegations fail to establish a more than *de minimis* physical injury. Such allegation is insufficient to meet the requirement for physical injury insofar as Plaintiff seeks an award of damages for his Eighth Amendment claim.

The court, therefore, recommends that Plaintiff's claims arising out of the conditions of confinement in the SHU and the incident where Roman grabbed his arm in a UDC meeting be **DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

F.    **Official Capacity Claims**

Plaintiff has not indicated whether he asserts his claims against each of the Defendants in their official and individual capacities. The court has already found that each of Plaintiff's claims asserted against these Defendants lack an arguable basis in law or fact, with the exception of Plaintiff's failure to protect/deliberate indifference to health and safety claim against Rios, and recommends that such claims be dismissed with prejudice as frivolous.

Suits against federal officials under *Bivens* may only be asserted in his or her individual

capacity. *Bivens*, 510 U.S. at 485. Plaintiff's claims against the Defendants in their official capacities are barred by the doctrine of sovereign immunity. *See Correctional Services Corp. v. Malesko*, 534 U.S. 61, 71-72, 151 L. Ed. 2d 456, 122 S. Ct. 515 (2001) (wherein the Supreme Court noted that "the purpose of *Bivens* is to deter individual federal officers from committing constitutional violations," not to deter a federal agency or the United States)**.** Therefore, Plaintiff's *Bivens* claims asserted against the Defendants in their official capacities for an award of money damages lack an arguable basis in law or fact and should be **DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

### III.  CONCLUSION, RECOMMENDATION, AND TRANSFER

The court has considered Plaintiff's allegations in his extensive complaint, his testimony, and the applicable law and recommends that the United States district judge:

1. **ORDER** Defendant Rios to **ANSWER OR OTHERWISE PLEAD** on Plaintiff's claim that Rios was deliberately indifferent to Plaintiff's health and safety/failed to protect Plaintiff by calling Plaintiff a "snitch" in front of other inmates;

2. **DISMISS** Plaintiff's claims against the remaining Defendants for cruel and unusual punishment in the form of deliberate indifference to serious medical needs, deliberate indifference to health and safety/failure to protect, deprivation of due process of law, unconstitutional conditions of confinement, deprivation of due process of law, and retaliation, as asserted against them in their individual and official capacities, **WITH PREJUDICE AS FRIVOLOUS**; and

2. **DENY** any pending non-dispositive motions not otherwise addressed above.

A copy of this report and recommendation shall be served on all parties in the manner

provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.

A copy of this order shall be sent by first class mail to all parties appearing *pro se* and to any attorney of record by first class mail or electronic notification.

Dismissal of this action does not release Plaintiff or the institution where he is incarcerated from the obligation to pay any filing fee previously imposed. *See Williams v. Roberts*, 116 F.3d 1126, 1128 (5th Cir. 1997).

**IT IS ORDERED** that the transfer of this case to the United States magistrate judge is terminated, and the case is hereby transferred to the docket of United States District Judge Sam R. Cummings.

DATED this 5th day of April, 2012.

_____
**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**